***********
The Full Commission have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the *Page 2 
Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Phillips.
 *********** EXHIBITS
1. Plaintiff's Exhibit No. 1 consisting of an Index of Exhibits and 1 — 25, totaling 298 pages.
2. State of North Carolina Exhibit No. 1 consisting of exhibits for hearing, including Employment Security Commission data.
3. State of North Carolina Exhibit No. 2-State and Federal Tax Returns for 2004-2007, Nixons' Personal Tax Records State and Federal for 2004-2007.
4. In addition to the evidence presented at the Deputy Commissioner hearing, the Full Commission accepts as evidence in this case the Certificate of Trust Existence and AuthorityIntervivos Trust Agreement dated November 13, 2008, and the Limited Warranty Deed for 56.09 acres in Beaufort County dated November 13, 2008, from Bradley Edward Nixon and Jenna Elizabeth Nixon, Co-Trustees, to Weyerhaeuser Company.
 *********** ISSUES
1. Are any or all defendants, including individual defendants, subject to the Workers' Compensation Act?
2. At all times relevant hereto were defendants either insured or self-insured for workers' compensation purposes pursuant to N.C. Gen. Stat. § 97-93? *Page 3 
3. Was David Franklin Murray (hereafter "decedent"), at the time of the accident, an employee of any or all defendants, including the individual defendants, and is it proper to pierce the corporate veil in this instance?
4. Did decedent die as a result of an injury by accident while in the course and scope of his employment with defendants?
5. What benefits are due as a result of decedent's death and to whom should those benefits be paid?
6. Are defendants Gregory E. Nixon and Joyce R. Nixon persons with the ability and authority to bring defendant-employer G J Transport Company into compliance with N.C. Gen. Stat. § 97-93?
7. Was plaintiff paid compensation within two years of the death of decedent pursuant to N.C. Gen. Stat. § 97-24, and if not, are defendants equitably estopped from challenging the Industrial Commission's jurisdiction?
8. Has any defendant, including the individual defendants, taken actions intended to diminish their ability to pay this claim?
9. Is plaintiff entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
10. What is decedent's average weekly wage and resulting compensation rate applicable to this claim?
 ***********
Based on the competent evidence of record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACTS
1. Deceased employee David F. Murray ("decedent") was born on April 15, 1945. Decedent married Gwen Murray (hereafter "plaintiff") on January 31, 1970, and they remained married until decedent's death on November 10, 2004.
2. At the time of decedent's death, he and plaintiff lived together at their home at 132 Budd Gardwin Lane, Dunn, North Carolina, where plaintiff continues to live today.
3. At the time of decedent's death, the Murrays had two adult children. Both were employed and neither lived with the Murrays or were dependent on decedent for support.
4. At the time of decedent's death no one other than plaintiff was either wholly or partially dependent upon him for support.
5. Gregory E. Nixon and Joyce R. Nixon (hereinafter "defendants") are married.
6. On July 31, 1998, defendants incorporated G J Transport Company in North Carolina for the purpose of operating a trucking operation.
7. On or about September 8, 2004, decedent was hired as an employee truck driver for defendant-employer G J Transport Company, a trucking company based in and operating out of Pantego, North Carolina. During his employment, G J Transport Company arranged decedent's loads, set his schedule, provided the truck and trailer he operated, and dispatched decedent at its discretion. At the end of 2004, G J Transport Company issued decedent an IRS Form W-2.
8. While decedent worked for defendant-employer G J Transport Company, and at the time of his death, G J Transport Company had at least three employees.
9. On November 10, 2004, decedent, in the course and scope of his employment with defendant-employer G J Transport Company, picked up a load of Smithfield pork *Page 5 
products in Benson, North Carolina, for transport to Mechanicsville, Virginia. While traveling north on Interstate 295 near Hopewell, Virginia, enroute to Mechanicsville, the tractor-trailer being operated by decedent left the road, crossed a wooden median, and crashed into the southbound shoulder of Interstate 295 where it caught fire. Decedent died in the cab of his truck from smoke and soot inhalation and thermal injuries.
10. On October 21, 2008, defendants were subpoenaed to appear and produce certain documents which would inform the Commission with regard to decedent's average weekly wage, including the exact date of hire. Defendants failed and refused to produce such documents despite admitting that such documents exist.
11. Decedent earned a total of $7,513.56 during the 63 days he worked for defendant-employer G J Transport Company. Decdent's average weekly wage is $834.82, which yields a compensation rate of $556.55.
12. Decedent's funeral expenses were paid by defendants.
13. Shortly after decedent's death, plaintiff spoke to defendant Joyce R. Nixon about benefits that might be owed as a result of decedent's death. Mrs. Nixon directed plaintiff to meet with Douglas P. Connor, an attorney in Mount Olive, North Carolina. At all times relevant hereto, Mr. Connor represented defendants.
14. Mr. Connor prepared a "Contract and Release of Claims" which plaintiff signed. The Contract and Release of Claims provided that in return for plaintiff's release of all claims against defendant-employer G J Transport Company, arising out of decedent's death, that defendant-employer would make payments in the amount of $345.00 per week for 400 weeks commencing the week of June 6, 2005, said payments to total $138,000.00. Defendants failed *Page 6 
and refused to produce information which would inform the Commission as to the basis for these calculations, or whether the calculations were in any way supported by fact or law.
15. Prior to the filing of this action by plaintiff, neither the Contract and Release of Claims nor any other documents relating to this claim were presented to the North Carolina Industrial Commission for approval.
16. Plaintiff reasonably relied upon defendants and their attorney to properly calculate, handle and resolve the issue of benefits due her as a result of decedent's death.
17. Between June 10, 2005 and January 11, 2008, defendants made 136 payments to plaintiff, totaling $46,920.00. Initially, defendant-employer G J Transport Company made the payments. Later, defendants Joyce R. and Gregory E. Nixon, individually, made the payments. Defendants have failed to make any payments since January 11, 2008. Said payments were made pursuant to N.C. Gen. Stat. § 97-24.
18. At all times, defendant-employer G J Transport Company was a closely held corporation with all stock held by defendants. Mr. Nixon was president of the company and Mrs. Nixon was its secretary. Defendants Mr. and Mrs. Nixon completely controlled and dominated all actions of defendant-employer G J Transport Company, between them making all important business, financial and management decisions in the operation of this business. Defendants Mr. and Mrs. Nixon did not maintain all of the required corporate formalities.
19. Defendants Mr. and Mrs. Nixon made an initial capital contribution of a few thousand dollars to start up defendant-employer G J Transport Company and did not make any additional capital contributions. The company has been consistently undercapitalized and operating at a loss. *Page 7 
20. At all times relevant hereto, defendant-employer G J Transport Company did not own any real property and leased the trucks and trailers used in the operation of the business. At all times relevant hereto, defendant-employer G J Transport Company operated its trucking business on real property jointly owed by defendants Mr. and Mrs. Nixon.
21. Defendants Joyce R. Nixon and Gregory E. Nixon were personally served notice of the hearing before the Deputy Commissioner, along with subpoenas to appear and produce certain documents in their individual and corporate capacities on October 21, 2008 by the Sheriff of Beaufort County.
22. At the aforementioned time, defendants Mr. and Mrs. Nixon were each subpoenaed to produce, in their individual capacities, the following items:
 a. Any and all records relating to the recent sale of property at 50 Windley, the 38 acre Robbins EST and the 2.85 John Peele HRS property, located in Beaufort county, or the distribution of related assets.
 b. Any and all records related to the November 10, 2004 accident or claim.
 c. Any and all individually and/or jointly filed tax returns for Gregory E. Nixon and Joyce R. Nixon from 2004 through 2007.
 d. Any and all bank statements for Gregory E. Nixon and Joyce R. Nixon from 2004 through 2007.
 e. Any and all retirement account statements for Gregory E. Nixon and Joyce R. Nixon from 2004 through 2007.
 f. Any and all brokerage account statements for Gregory E. Nixon and Joyce R. Nixon from 2004 through 2007. *Page 8 
 g. A list of all property owned excluding individual items with a value of less than $250.00.
23. At the aforementioned time, defendants Mr. and Mrs. Nixon were each subpoenaed to produce, on behalf of defendant-employer G J Transport Company, the following items:
 a. Any and all records related to the November 10, 2004 accident or claim.
 b. Any and all business records of G J Transport Company including payroll and timesheets from 2003 through 2007.
 c. Any and all records relating to the sale of G J Transport Company and distribution of related assets.
 d. Any and all tax returns for G J Transport Company from 2004 through 2007.
 e. Any and all bank statements for G J Transport Company from 2004 through 2007.
 f. A copy of G J Transport Company's employee file for decedent David Franklin Murray.
24. In response, defendants produced two documents, the "Contract and Release of Claims" and a schedule of payments made to plaintiff. Defendant Mr. Nixon testified that he did not produce the aforementioned documents because he was confused about what he was to bring to hearing. On cross-examination, Mr. Nixon testified, however, that he understood each of the items that he was subpoenaed to produce and that the directions were clear to him.
25. Defendants Mr. and Mrs. Nixon deliberately and willfully failed and refused to comply with the lawfully issued subpoenas of the North Carolina Industrial Commission which *Page 9 
were personally served upon them by the Sherriff of Beaufort County on October 21, 2008, seeking, among other things, documentation of G J Transport Company's compliance with corporate formalities, such as shareholder's meetings, board meetings, evidence of separation of personal and company finances, and the issuance of stock.
26. Defendants Mr. and Mrs. Nixon each had the authority and ability to purchase workers' compensation insurance for defendant-employer G J Transport Company, and thereby bring the company into compliance with N.C. Gen. Stat. § 97-94 regarding insurance, and each willfully failed to do so. Defendants Mr. and Mrs. Nixon testified that G J Transport Company stopped purchasing workers' compensation coverage when the rates increased and the company could not afford the higher rates. Defendants further testified that they did not have sufficient personal assets to contribute to the company in order for it to meet its financial obligations, including the purchase of workers' compensation insurance. The last date of coverage for defendant-employer G J Transport Company was October 28, 2004. Defendant-employer G J Transport Company continued to operate with at least three employees up to February 15, 2007.
27. The acts of defendants Mr. and Mrs. Nixon and defendant-employer G J Transport Company, including their failure to properly submit and admit this claim, their unilateral termination of benefits, and their failure to produce the subpoenaed documents, are unreasonable and have resulted in unfounded litigiousness.
28. Defendants testified that they stopped paying plaintiff benefits through defendant-employer G J Transport Company when the company ceased operations. Defendants testified that they stopped paying benefits personally around January of 2008 because they did not have sufficient personal assets to continue to do so. *Page 10 
29. On or about 1989, defendants Joyce R. Nixon and Gregory E. Nixon were jointly deeded ownership of three tracts of land in Beaufort County, North Carolina, by Bernice B. Robbins (Cannon). Bernice B. Robbins (Cannon) is the mother of Joyce R. Nixon. At around that same time, Joyce R. Nixon and Gregory E. Nixon signed and filed a deed of trust in favor of Mrs. Robbins (Cannon) in the amount of $134,000.00, encumbering the three tracts.
30. On July 18, 2007, defendants Mr. and Mrs. Nixon executed a "deed in lieu of foreclosure" returning the ownership of the three tracts to Mrs. Nixon's mother, Bernice B. Robbins (Cannon). On that same day, Bernice B. Robbins (Cannon) quitclaimed ownership of the three tracts to Bradley Edward Nixon and Jenna Elizabeth Nixon, in trust for the benefit of Gregory E. Nixon and wife, Joyce R. Nixon. Bradley Edward Nixon and Jenna Elizabeth Nixon are the adult children of defendants Mr. and Mrs. Nixon. Also in 2007, defendant Mr. Nixon transferred ownership of a trailer to his son, Bradley Edward Nixon.
31. The tax value of the three tracts as of 2008, as assigned by the Beaufort County Revenue Collector, was $323,934.00.
32. Defendants Mr. and Mrs. Nixon transferred the three tracts of property in 2007 for consideration well below the value of the property in order to diminish their apparent ability to pay this claim, with the intent to hinder, delay or defraud plaintiff, a creditor, and in an attempt to convey an inheritance to their children.
 ***********
Based on the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial commission has jurisdiction over the parties and the subject matter. *Page 11 
2. On November 10, 2004, defendant-employer G J Transport Company was subject to and bound by the North Carolina Workers' Compensation Act in that G J Transport Company regularly employed three or more employees. N.C. Gen. Stat. §§ 97-2, 97-93.
3. An employment relationship existed between decedent David Franklin Murray and G J Transport Company, Gregory E. Nixon, and Joyce R. Nixon at the time of decedent's death on November 10, 2004. N.C. Gen. Stat. § 97-2.
4. On November 10, 2004, decedent sustained a compensable work related injury by accident arising out of and in the course of his employment, which resulted in his death on that date. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff Gwen Murray was wholly dependent upon decedent at the time of his death and is therefore entitled to death benefits. N.C. Gen. Stat. §§ 97-38, 97-39. Decedent did not leave any other persons who were either wholly or partially dependent upon decedent for support. Therefore, Gwen Murray is the only person qualified to receive compensation for decedent's death. N.C. Gen. Stat. §§ 97-2(14); 97-38; 97-39.
6. On October 21, 2008, defendants were subpoenaed to appear and produce certain documents which would inform the Commission what decedent's average weekly wage was, including the exact date of hire. Defendants failed and refused to produce such documents, despite admitting that such documents exist. The Commission concludes, therefore, that decedent's employment began on September 8, 2004 and ended on November 10, 2004. Plaintiff earned $7,513.56 during the 63 days (nine weeks) he worked for defendant-employer G J Transport Company. Decedent's average weekly wage is, therefore, $834.82, which yields a compensation rate of $556.55. N.C. Gen. Stat. § 97-2(5). *Page 12 
7. Plaintiff Gwen Murray is entitled to receive payment by defendants of death benefits at the rate of $556.55 per week for 400 weeks beginning November 10, 2004. N.C. Gen. Stat. § 97-38.
8. Plaintiff is entitled to payment by defendants of the medical expenses, if any, incurred for the treatment of decedent on November 10, 2004. N.C. Gen. Stat. § 97-25.
9. Death benefits were first due to be paid to plaintiff not later than 90 days from the date of decedent's death, or February 9, 2005. All payments made to date were late, as are all arrearages, and are therefore subject to a 10% penalty. N.C. Gen. Stat. § 97-18.
10. On November 10, 2004, defendants Mr. and Mrs. Nixon were the alter egos of G J Transport Company. On that date, defendants Mr. and Mrs. Nixon dominated ownership of the company's stock, its finances, business policies, business decisions and business practices, and otherwise exercised complete dominion and control over defendant-employer G J Transport Company. Defendants Mr. and Mrs. Nixon, individually, used such control to violate the legal duty to maintain workers' compensation insurance coverage, resulting in there being no insurance coverage for the accident in question, hindering plaintiff in the pursuit of the benefits owed her. Plaintiff is entitled to pierce the corporate veil and recover from Joyce R. Nixon and Gregory E. Nixon individually. N.C. Gen. Stat. § 97-93.
11. Although the Commission has found that the benefits paid plaintiff by defendants constituted payments within two years of the injury or death pursuant to N.C. Gen. Stat. § 97-24, the Commission further finds that defendants are equitably estopped from asserting N.C. Gen. Stat. § 97-24 as a bar to this claim.Belfield v. Weyerhaeuser Company,77 N.C. App. 332, 335 S.E.2d 44 (1985). *Page 13 
12. Defendant-employer G J Transport Company was required to maintain workers' compensation insurance and failed to have in effect workers' compensation insurance to cover its employees. N.C. Gen. Stat. § 97-93. Defendant-employer G J Transport Company and defendants Mr. and Mrs. Nixon did not carry workers' compensation insurance coverage at the time of decedent's death. The last date of coverage for defendant-employer G J Transport Company was October 28, 2004. Defendant-employer G J Transport Company continued to operate with at least three employees up to February 15, 2007. N.C. Gen. Stat. § 97-93.
13. N.C. Gen. Stat. § 97-94(b) provides that "Any employer required to secure the payment of compensation under this Article who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases; and the employer shall be liable during continuance of such refusal or neglect to an employee either for compensation under this Article or at law at the election of the injured employee." N.C. Gen. Stat. § 97-94(b). G J Transport, Gregory R. Nixon and Joyce E. Nixon did not have a valid policy of workers' compensation insurance in effect from October 28, 2004 until February 15, 2007. As such, a penalty of $50.00 per day is assessed against defendants for failing to secure workers' compensation insurance. N.C. Gen. Stat. § 97-94(b).
14. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this *Page 14 
subsection may be assessed a civil penalty by the Commission in an amount up to 100% of the amount of any compensation due the employer's employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d). Therefore, an additional penalty is assessed against defendants for failing to comply with N.C. Gen. Stat. § 97-93.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants G J Transport, Gregory R. Nixon and Joyce E. Nixon shall jointly and severally pay to plaintiff compensation at the rate of $556.55 per week, commencing February 9, 2005, and continuing thereafter for 400 weeks. The portion of this compensation that has accrued shall be paid in lump sum. A penalty of 10% is assessed against all benefits accrued to date.
2. Defendants are given a credit against the arrearage in the amount of $46,920.00.
3. Defendants shall pay medical expenses, if any, incurred as the result of decedent's death.
4. A reasonable attorney's fee in the amount of 25% of compensation due plaintiff is awarded and approved for plaintiff's counsel. Said attorney's fee shall not be deducted from the compensation due plaintiff, but shall be paid in addition to such compensation. Defendants G J Transport, Gregory R. Nixon and Joyce E. Nixon shall specifically pay said fee, jointly and severally, as a result of their stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), defendants G J Transport, Gregory E. Nixon and Joyce R. Nixon are assessed a penalty of $50.00 per day for failing to secure workers' *Page 15 
compensation insurance. A check in the amount of $41,750.00.00 shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney Tracy C. Curtner at the Fraud Unit of the North Carolina Industrial Commission.
6. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty in the amount of 100% of the amount of the compensation due to plaintiff in this matter is assessed against defendants G J Transport, Gregory E. Nixon and Joyce R. Nixon for failing to comply with N.C. Gen. Stat. § 97-93. Assistant Attorney General Curtner shall compute the total penalty amount and forward this calculation to the parties within 10 days of the filing of this Opinion and Award. This amount shall be paid to the North Carolina Industrial Commission and defendants shall send payment directly to Assistant Attorney Tracy C. Curtner at the Fraud Unit of the North Carolina Industrial Commission.
7. This matter is HEREBY REFERRED to Chief Deputy Commissioner Wanda Blanche Taylor for scheduling a show cause hearing before a Deputy Commissioner as to whether the defendants shall be held in contempt.
8. Further, this matter is HEREBY REFERRED to the Fraud Unit of the North Carolina Industrial Commission for investigation and determination by that unit as to whether criminal charges shall be brought against Gregory E. and Joyce R. Nixon for failure to maintain workers' compensation insurance in the State of North Carolina.
9. Defendants shall pay the costs due the Commission.
This ___ day of August, 2009.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1